

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

March 6, 1947

Honorable Victor C. Marshall
Executive Director
Texas State Soil Conservation Board
2nd Floor, First State Bank Building
Temple, Texas

Opinion No. V-69

Re: May the San Jacinto Soil Conserva-
tion District contract with the
San Jacinto River Conservation
and Reclamation District to hold
said Reclamation District harmless
from liability, resulting from
the negligent use of equipment
and the negligent acts of employ-
ees operating such equipment,
during the time that such equip-
ment and employees are on loan
from the San Jacinto River Con-
servation and Reclamation Dis-
trict but are under the control
of the San Jacinto Soil Conserva-
tion District?

Dear Sir:

The question presented in your letter of Jan-
uary 25, 1947, is whether the Board of Supervisors of the
San Jacinto Soil Conservation District may, under the
"State Soil Conservation Law", Article 165a-4, V.A.C.S.,
contract with the San Jacinto River Conservation and Rec-
lamation District, as follows:

"Second Party agrees to hold harm-
less and indemnify First Party from any
liabilities for damages or negligence,
or for any act of the operator or employ-
ees used in operating such equipment or
material while same is under the direc-
tion of Second Party, and until it is re-
turned to First Party."

The quoted provision is found in Paragraph 5 of the proposed contract between the two districts, which was attached to your letter and is returned herewith.  For convenience, the San Jacinto Soil Conservation District will be hereinafter referred to as "Conservation District" and the San Jacinto River Conservation and Reclamation District will be hereinafter referred to as "Reclamation District".

The equipment and materials referred to in the quoted section are not identified by the contract, but it is assumed that such equipment and material consists of bulldozers, graders and other machines of a type usually used in road work.  Your file indicates that the Conservation District is presently using a maintainer furnished by the Reclamation District for terracing and drainage work.

The question may be stated in more general terms, as follows:

May one State agency contract with another State agency to assume tortious liability resulting from the negligent use of equipment and the negligent acts of the employees in operating such equipment during the time that such equipment and employees are under the control and direction of the borrowing agency.

The solution of the problem presented requires an understanding of the nature and of the powers and duties of the State agencies involved.

The San Jacinto Soil Conservation District was created under Article 165a-4, V.A.C.S., Acts 1939, p. 7, as amended Acts 1941, p. 491, and known as the "State Soil Conservation Law".  A Soil Conservation District formed under this Act "shall constitute a governmental division of this State and a Public body corporate and politic exercising public powers"; with power to carry out preventive and control measures through engineering operations, methods of cultivation, growing of vegetation, changes in use of land; to enter into agreements with any agency, governmental or otherwise, in the carrying on of erosion control and prevention operations; to purchase, improve and dispose of real and personal property; to make available to landowners engineering machinery and equipment, fertilizer and seeds; to construct buildings; to purchase or otherwise take over Federal soil erosion projects; to sue

and be sued in the name of the district; to make and
execute contracts or other instruments necessary or con-
venient to the exercise of its powers.  The power to
levy taxes is specifically withheld.  A district is re-
quired to obtain from the Secretary of State a certifi-
cate of organization, and when this is accomplished,
"the district shall constitute a governmental subdivi-
sion of the State and a public body corporate and poli-
tic."  Upon dissolution, the District is required to
obtain a certificate to that effect from the Secretary
of State.  The creation of a district, its projects and
its dissolution is at the will of the landowners within
the district expressed through elections.

The San Jacinto River Conservation and Recla-
mation District was created by Acts of 1937, 45th Leg.,
House Bill 832, copied in V.A.C.S., Vol. 21, beginning
at page 617, and the various amendments thereto, begin-
ning at page 148, Pocket Part, V.A.C.S., Vol. 21, all
initiated under the constitutional authority granted in
Article 16, Sec. 59 of the Constitution of Texas, under
which Constitutional amendment the districts "shall be
governmental agencies and bodies politic and corporate
with such powers of government and the authority to exe-
cute such rights, privileges and functions concerning
the subject matter of this amendment as may be conferred
by law"; the purposes of such districts are taken from
the Constitution and are stated in the Act to be, "the
control, storing, preservation and distribution of its
storm and flood waters, the waters of its rivers and
streams for irrigation, power and all other useful pur-
poses, the reclamation and irrigation of its arid, semi-
arid, and other lands needing irrigation, the reclama-
tion and drainage of its overflowed lands, and other
land needing drainage, the conservation and development
of its forests, water and hydro-electric power, the navi-
gation of its inland and coastal waters, and the preser-
vation and conservation of all such natural resources of
the State."  Districts are granted broad powers in the
Act and in addition are granted the same powers conferred
upon Water Control and Improvement Districts by Chapter
25, Acts 1925 (Article 7880-1 to 147c 6, inclusive,
V.A.C.S.), and under these grants such districts may con-
tract generally in furtherance of their purposes; acquire
by purchase, condemnation or other means lands and rights
of way; sue and be sued in the name of the district; levy
taxes; issue bonds; sell water, water connections, power,
electric energy, and other services furnished or supplied

by the district; and although the districts may not mortgage or otherwise encumber their property and have only limited right of sale of such property, they may contribute to the construction of any improvement by any similar district the construction of which shall contribute to their benefit; and, to a limited extent, the district is dependent on the will of the landowners residing therein,as expressed at elections.

As a general rule, the State and its political subdivisions are not liable in tort while performing acts in the public interest, unless some statute specifically authorizes such liability.  If this rule applies to the contracting State agencies under discussion, the contractual provision may serve no useful purpose.

The law in Texas on this subject seems to be that where districts similar to those involved here are performing a governmental or public function, they will not be liable in tort, but where the function is proprietary and private, then liability follows.

Under the authority laid down in Jones vs. Jefferson County Drainage District (T.C.A.), 139 S.W. (2) 861, writ ref., Peters vs. Matagorda County Drainage District No. 1, (T.C.A.) 146 S. W. (2) 779, writ ref., and Hodge vs. Lower Colorado River Authority (T.C.A.), 163 S. W. (2) 855, it is difficult to conceive of a situation in which either the Reclamation District or the Conservation District would be liable for the torts of their agents and employees.  In each of the above cited cases, the District involved was created by statute for the purposes and under the authority expressed in Sec. 59, Article 16, of the Constitution.  In the Jones case, the employee of the drainage district was injured by being thrown from an automobile while being transported to work by an agent of the District.  In the Peters case, the employee was injured by the premature explosion of a charge of dynamite discharged by a fellow employee on a drainage work being done by the District.  In the Hodge case, the employee was injured in the course of his employment in the construction of the dam across the Colorado River at Austin.

From the wording of the contractual provision under consideration, it is believed that the type

of injuries anticipated by the contracting districts are similar to the injuries described in the cases referred to.

In declaring drainage districts not liable in tort, the following language was used in Jones vs. Jefferson County Drainage District (supra):

"Drainage districts created under the provisions of Chapter 7 of Title 128, Art. 8097, V.C.S., enacted under authority of Art. 16, Sec. 59a, of the State Constitution, Vernon's Ann. St., are political subdivisions of the state of the same nature and stand upon exactly the same footing as counties, or precincts, or any of the other political subdivisions of the state. Harris County Drainage District No. 12 v. City of Houston, Tex. Com. App., 35 S. W. (2) 118; Wharton County Drainage District No. 1 v. Higbee, Tex. Civ. App., 149 S. W. 381; American Surety Co. v. Hidalgo County, Tex. Civ. App., 283 S.W. 267, writ of error refused; Parker v. Harris County Drainage District, Tex. Civ. App., 148 S.W. 351; Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139; Nussbaum v. Bell County, 97 Tex. 86, 76 S.W. 430; Braun v. Trustees of Victoria Independent School District, Tex. Civ. App., 114 S. W. (2) 947; 15 Tex. Jur. 722.

"In the Gerhart Case, supra, our Supreme Court held (115 Tex. 449, 283 S.W. 140): 'It is well established that at common law counties as a rule are not liable for injuries resulting from the negligence of their officers or agents, and no recovery can be had in damages unless liability be created by statute. Heigel v. Wichita County, 84 Tex. 392, 19 S.W. 562, 31 Am. St. Rep. 63; Nussbaum v. Bell County, 97 Tex. 86, 76 S.W. 430.'

"Since drainage districts are of the same nature and stand upon the same footing as counties, and since counties are not liable for injuries resulting from the negligence of their officers or agents, it logi-

cally follows that drainage districts,
likewise, are not liable for injuries re-
sulting from the negligence of their of-
ficers or agents."

In extending this rule to conservation and
reclamation districts and in reviewing the law relating
to this matter, it is stated in Hodge v. Lower Colorado
River Authority (supra):

"Appellee was created as a conser-
vation and reclamation district under and
by virtue of Chap. 7, Acts 4th Called Ses-
sion of the 43rd Legislature, Vernon's Ann.
Civ. St. following article 8197f, and un-
der authority of Sec. 59(a), Art. 16 of the
Constitution of Texas, Vernon's Ann. St.
* * * The building of the Austin dam was,
in keeping with the legislative act creat-
ing the Authority, and so far as appellee
was concerned, not purely for the purpose
of generating electric power for the City
of Austin; but was one of the authorized
methods adopted by appellee to conserve
and utilize a natural resource of the State
for hydroelectric power for a public use.
The building of the dam as a step in the
conservation of a natural resource is an
entirely different matter from a particular
sale of the power subsequently to be gener-
ated by it after its completion. In the
former, regardless of the latter, the dis-
trict acted in a governmental capacity for
a public purpose, one in which all the pub-
lic, and not merely the inhabitants of the
City of Austin, were interested.

" * * * such districts, created under
Sec. 59(a) of Art. 16 of the Constitution,
'are political subdivisions of the state of
the same nature and stand upon exactly the
same footing as counties, or precincts, or
any of the other political subdivisions of
the state'; and consequently are immune from
liability for torts of their agents and em-
ployees. Since all of such districts,--and
several different kinds are so authorized,--
created under this section of the Constitu-
tion are all designed to effectuate the same

objectives, that is, the conservation and utilization of the natural resources of the state in which all the public are interested, they must all logically fall into the same category on the question of immunity from lia-bility for torts."

And in construing the effect of Section 59, Article 16, of the Constitution, it is said, by way of dictum, in Hidalgo County Water Control and Improvement District No. 1 vs. Gannaway (T.C.A.), 13 S. W. (2) 204, writ ref.:

"Was it intended in those declara-tions (Art. 16, Sec. 59) by the framers of the constitutional provision to lift such corporations, therein authorized, from the status universally occupied by purely local public organizations, and give them the preferred status of municipalities exer-cising 'public rights' and performing 'pub-lic duties,' with all the exemptions ac-corded such municipalities by the common law? If this was not the purpose of those declarations, then none other is conceiv-able, and they have no effectual signifi-cance. It seems to the writer that the constitutional declarations must have been made in view of the inhibition against ex-emption from the common-law liability and of the decisions of our Supreme Court giv-ing effect to the common-law rule applica-ble to municipalities exercising functions other than those essentially public in character, and were intended to protect the districts therein provided for against the operation of that rule."

The trend in Texas as evidenced by the fore-going opinions indicates that the Districts here in-volved will be liable for few acts of negligence result-ing in personal injury. Therefore, little necessity is seen for the contractual provision under consideration. If, however, a contractual provision of the nature sought is still desired, no reason is known by this department why such a provision may not be included.

We believe the law with reference to public contracts is correctly stated in Donnelly on Public Con-

tracts, Section 3, dealing with implied powers, as fol-
lows:

>"Public bodies authorized to do a
particular act have with respect to such
act the power to make all contracts
which natural persons might make. They
have all the powers possessed by natural
persons, as respects their contracts ex-
cept where they are expressly, or by im-
plication, restricted."

Although we have not been called upon to
express an opinion on the ability of the districts to
contract with respect to the cooperative matters ex-
pressed in the contract, being called on only with re-
spect to such contract as relates to paragraph 5, nev-
ertheless, we interpret the acts creating these dis-
tricts as giving them the power to make such contracts.
The power to contract with reference to the matters
set out in paragraph 5 of said contract is incidental
to and may be implied from the parent contract, the im-
plication being that in order to avail itself of valua-
ble machinery and the operation thereof, for the fur-
therance of its public purposes, the Conservation Dis-
trict may properly agree to the provision in question.
The matter is one of trade, customary in dealings be-
tween private individuals and corporations, and no re-
striction is known which would place the districts here
involved in a different position. The inclusion of the
provision in the contract will not create liability to
third parties where none exists under the law.

It is the opinion of this department that
the contractual provision in question may serve no use-
ful purpose, but that no reason exists prohibiting the
parties so contracting if they so desire.

## SUMMARY

A Soil Conservation District may con-
tract with a Water Reclamation and Conser-
vation District to hold harmless such water
Reclamation and Conservation District from
liability resulting from the negligent use
of equipment, and the negligent acts of em-
ployees in operating such equipment, during
the time that such equipment and employees

are on loan from the Water Reclamation and
Conservation District, but are under the
control and direction of the Soil Conserva-
tion District; however, under existing law
with reference to such liability, little
need is seen for such a provision.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By H. D. Pruett, Jr.
H. D. Pruett, Jr.
Assistant

HDP:jr:sl:wb

APPROVED
OPINION COMMITTEE
BY  BWB
CHAIRMAN

APPROVED MARCH 6 1947

Price Daniel

ATTORNEY GENERAL OF TEXAS